JS6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLYTOY WORLDWIDE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAY AT PLAY INTERNATIONAL HONG KONG LIMITED d/b/a Jay at Play, a Hong Kong private limited company; JAY FRANCO & SONS, INC., a New York corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 19-cv-07831-AB (MRW)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY** |

Before the Court is Defendants Jay at Play International Hong Kong Limited et al.'s ("Defendants") Motion to Dismiss Plaintiff Kellytoy Worldwide Inc.'s ("Plaintiff") Complaint for Lack of Personal Jurisdiction. ("Motion," Dkt. No. 19). Plaintiff filed an opposition ("Opp'n," Dkt. No. 24) and Defendant replied (Dkt. No. 26). Finding this matter appropriate for resolution without oral argument, the Court

1.

**VACATES** the hearing set for December 6, 2019. *See* Fed. R. Civ. P. 78; L.R. 7–15. For the following reasons, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's request for jurisdictional discovery.

## I. BACKGROUND

This action arises out of Defendants' purported infringement of Plaintiff's plush toy trademark. (Complaint ("Compl."), Dkt. No. 1). Plaintiff asserts claims against Defendants for (1) federal trademark infringement (15 U.S.C. § 1114(1)–(2)); (2) federal trademark infringement, false designation of origin, and false description (15 U.S.C. § 1125); (3) common law trademark infringement; (4) California common law unfair competition; (5) California statutory unfair competition; and (6) cyberpiracy (15 U.S.C. § 1125(d)). (*Id.* at 1; *see also id.* at ¶¶ 59–98).

Plaintiff is a California corporation with its principal place of business in Los Angeles, California. (*Id.* at 4, ¶ 10). Defendant Jay At Play ("Jay At Play") is a Hong Kong private limited company. (*Id.* at 4–5, ¶ 12). Plaintiff alleges that Jay At Play is a division or subsidiary of Jay Franco ("Franco") and under Franco's control. (*Id.* at 5, ¶ 12). Plaintiff also alleges that Franco is a corporation organized under the laws of the state of New York with its principal place of business at 295 Fifth Avenue, Suite 312, New York, New York 10016. (*Id.* ¶ 13).

Plaintiff's Complaint alleges that Jay At Play has exploited Plaintiff's "longstanding and well-earned goodwill in the plush toy marketplace by infringing on [its] registered trademark and distinctive trade dress." (*Id.* ¶ 5). Specifically, Plaintiff alleges that Jay At Play infringed its federally trademarked SQUISHMALLOW® branded plush toys by selling its MUSHMILLOWS that "co-opt Kellytoy's Squishmallows' original features and designs." (*Id.* ¶ 8). Plaintiff claims that, "to sow consumer confusion and consequently draw business from Kellytoy," Jay At Play developed the infringing Mushmillows, purportedly a "virtual and linguistic replica of Kellytoy's Squishmallows trademark." (*Id.* ¶ 5). Plaintiff alleges that Jay At Play has been manufacturing, offering for sale, and selling to customers its allegedly infringing

2.

products. (*Id.* ¶ 8). According to Plaintiff, Jay At Play is selling its competing goods in the same retail outlets as Plaintiff's products (*id.* at 3, ¶ 5), and is actively distributing Mushmillows to customers throughout the State of California and the Central District, including at least to Walmart, Inc., where Plaintiff also sells its goods (*id.* ¶¶ 4, 40).

Defendants bring the instant Motion on grounds that they lack any meaningful connection to the Central District or the State of California, and therefore, this Court lacks jurisdiction over them. In support of this Motion, Defendants provide evidence that Jay At Play: (1) has no offices or staff in California, is not registered to do business in California, has no registered agent in California, and pays no California state taxes (Declaration of Alan Sutton ("Sutton Decl.") ¶ 9, Dkt. No. 19-1); (2) is not a division, subsidiary, or under the control of Jay Franco (*id.* ¶ 10)[1]; (3) only sells its Mushmillows to Walmart (*id.* ¶ 14); (4) delivers its goods to Walmart "FOB" Shanghai, meaning that Walmart takes ownership of the Mushmillows as soon as Jay at Play delivers them to a warehouse in Shanghai (*id.* ¶ 15); (5) Walmart has never directed it to ship Mushmillows to a California warehouse (*id.* ¶ 16); and (6) has not directly sold or advertised any Mushmillows in California or advertised them on social media (*id.* ¶¶ 17–19).

**II. DISCUSSION**

    **a. Motion to Dismiss for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure ("Rule") Rule 12(b)(2) provides a basis for moving to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant moves to dismiss, the plaintiff bears the burden of demonstrating the court's jurisdiction over the moving defendant. *Pebble Beach Co.*

---

[1] Plaintiffs dispute this because in another case, "Defendants admitted and affirmatively alleged that 'Jay At Play is a division or subsidiary of Franco . . . .'" (Declaration of Mark B. Mizrahi ("Mizrahi Decl.") at 3 ¶ 5 and Ex. 4 at 111–128, Dkt. No. 24-1).

3.

*v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The plaintiff only needs to make a prima facie showing of personal jurisdiction to overcome a motion to dismiss.  *Id.*  The court assumes that uncontroverted allegations in the plaintiff's complaint are true, and conflicts between the parties' declarations are resolved in the plaintiff's favor.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

The court first looks to state law to determine whether a court possesses personal jurisdiction over a defendant.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  California's long-arm statute allows the exercise of personal jurisdiction "on any basis not inconsistent with the Constitution of [California] or of the United States."  Cal. Code Civ. Proc. § 410.10.  Thus, the question is whether due process allows this Court to exercise personal jurisdiction over Defendants.

Due process requires an out-of-state defendant to have "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quotations omitted).  Two types of jurisdiction satisfy this minimum contacts test: (1) general jurisdiction and (2) specific jurisdiction.  *See id.* at 919.  Defendants assert that this Court lacks both general and specific personal jurisdiction over them, thereby warranting dismissal.  (*See generally* Motion).  Plaintiff counters that this Court has specific personal jurisdiction over Defendants (*see generally* Opp'n), and argues in the alternative that the Court should permit Plaintiff to conduct jurisdictional discovery if it agrees with Defendants (*id.* at 20–21).  The Court analyzes both types of jurisdiction and determines that it lacks both general and specific personal jurisdiction over Defendants.

### i. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear,* 564 U.S. at 919.  For corporations, "the place

of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 ("These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims"). Beyond these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. Though a corporation may still be subject to general jurisdiction in other states when its contacts make them essentially "at home" there, the Supreme Court has rejected the exercise of general jurisdiction in any state just because "a corporation engages in a substantial, continuous, and systematic course of business" in that state. *Id.* at 138.

Here, as Defendant points out, "Kellytoy makes no argument based on a theory of general personal jurisdiction." (Reply at 2, n.1). Plaintiff concedes as much, explaining that "without the benefit of discovery, Kellytoy has not yet had the chance to elicit evidence establishing general jurisdiction or to test the assertions made in Mr. Sutton's declaration." (Opp'n at 7). Thus, Plaintiff has not established that Defendants here are subject to general personal jurisdiction in California, and the Court is convinced that it cannot do so. Jay At Play is a Hong Kong corporation that only has a physical domestic presence in Florida. (Compl. ¶ 12; Sutton Decl. ¶ 8). Franco is a New York corporation that only has warehouse space in California owned and managed by a third party. (Compl. ¶ 13; Declaration of Joseph Franco ("Franco Decl.") ¶ 8). The evidence before the Court sufficiently establishes that neither defendant is "at home" in California.

### ii. Specific Jurisdiction

Even without general jurisdiction, the exercise of personal jurisdiction over Defendants may be proper if Plaintiff's claims arise out of Defendants' contacts in California. Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall,* 466 U.S. 408, 414 n. 8 (1984). The question of whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit has established a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake,* 817 F.2d 1416, 1421) (9th Cir. 1987)). The plaintiff bears the burden of establishing the first two elements, and if met, the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable. *Id.*

### 1. Purposeful Direction

"A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.* The Ninth Circuit applies the purposeful direction test to trademark cases because it has found that such cases are "akin to a tort case." *Delphix Corp. v. Embarcadero Techs., Inc.,* 749 Fed. App'x 502, 509 (9th Cir. 2018); *see also, e.g.*, *Nissan Motor Co. v. Nissan Computer Corp.,* 246 F.3d 675, 675 (9th Cir. 2000) (applying purposeful direction analysis to trademark infringement lawsuit). Because the instant case involves a trademark dispute that sounds in tort, the purposeful direction test applies.

To determine whether an alleged tortfeasor purposefully directed its activities at the forum state, courts apply a three-part "effects test" derived from the Supreme

6.

Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger,* 374 F.3d at 803. Under that test, the plaintiff must allege or otherwise show that the defendant "(1) committed an intentional act, (2) expressly aimed [the act] at the forum state, and (3) caus[ed] harm that the defendant knows is likely to be suffered in the forum state." *Id*. "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond,* 68 F. Supp. 3d 1142, 1163 (N.D. Cal. Sept. 22, 2019) (citing *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128–29 (9th. Cir. 2010)).

### a. Intentional Act

A plaintiff satisfies the intentional act element of the *Calder* test by showing that the defendant intentionally performed the alleged acts, even if the defendant did not intend the results of its conduct. *See Schwarzenegger*, 374 F.3d at 806.

Here, Plaintiff easily satisfies this first element. Plaintiff alleges that Defendants have committed intentional acts by deliberately duplicating Plaintiff's established mark and then manufacturing, offering to sell, and actually selling its infringing plush toys, effectively misleading customers into believing its goods are associated with Plaintiff's goods. (*Id.* at 3 ¶ 5; 4, ¶ 8). Courts have recognized that similar actions are intentional. *See, e.g., Cal. Brewing Co. v. 3 Daughters Brewing, LLC,* 2016 WL 1573399, at *4–5 (E.D. Cal. Apr. 18, 2016) (marketing and selling products that allegedly infringed plaintiff's trademark constituted intentional acts under *Calder*). Thus, the Court concludes that Plaintiff has sufficiently alleged that Plaintiff has committed an intentional act.

### b. Expressly Aimed at California

The second element of the *Calder* test requires the plaintiff to establish that the defendant expressly aimed its actions at the forum state. *Schwarzenegger*, 374 F.3d at 803. "Express aiming is an ill-defined concept that we have taken to mean 'something more' than 'a foreign act with foreseeable effects in the forum state.'"

7.

*Pakootas v. Teck Cominco Metals, Ltd.,* 905 F.3d 565, 577 (9th Cir. 2018) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000)). Express aiming is generally satisfied when the plaintiff alleges that the defendant, knowing that the plaintiff is a resident of the forum state, engages in wrongful conduct targeted at the plaintiff. *Bancroft & Masters*, 223 F.3d at 1087. It requires more than "'untargeted negligence' that merely happened to cause harm to [the plaintiff]." *Schwarzenegger*, 374 F.3d at 807 (quoting *Calder*, 465 U.S. at 789).

In analyzing "express aiming," courts "must look to the defendant's 'own contacts' with the forum," and not on the plaintiff's connections to the forum. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1070 (9th Cir. 2017) (citing *Walden v. Fiore,* 571 U.S. 277, 289 (2014)). "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum." *Mitchell v. Berwyn Partners, Inc.,* 2018 WL 3328220, at *5 (N.D. Cal. July 6, 2018) (quoting *Morrill v. Scott Fin. Corp.,* 873 F.3d 1136, 1142 (9th Cir. 2017)). Further, "[m]ere injury to a forum resident is not a sufficient connection to the forum." *Walden,* 571 U.S. at 278.

Here, Plaintiff fails to plausibly allege that Defendants "expressly aimed" their alleged conduct at California. Plaintiff advances two main arguments to justify this Court's exercise of specific personal jurisdiction: (1) "individualized targeting," or that Jay At Play "willfully infringed Kellytoy's trademark knowing of Kellytoy's California domicile" (Opp'n at 5); and (2) Jay At Play established sufficient California contacts, because the company's allegedly "infringing goods are being actively sold at Walmart stores in California" which "Jay at Play almost certainly knew would occur when it distributed goods to Walmart." (Opp'n at 5). Neither is sufficient to establish specific personal jurisdiction.

### i. Individualized targeting is insufficient.

"Individualized targeting" alone is insufficient to establish specific jurisdiction. The relevant inquiry is not the defendant's knowledge of a plaintiff's connections but whether the *defendant's own contacts in the forum* establish jurisdiction. *Axiom,* 874 F.3d at 1070; *Walden,* 571 U.S. at 290. Even if the defendant is sued for committing an intentional tort that was expressly aimed at the forum state and knowingly causes injury in the forum state, the fact that the plaintiff resides in that forum—while potentially relevant—is not alone sufficient. *Walden,* 571 U.S. at 286.

Here, Plaintiff relies on an outdated test for purposeful direction. Under this test, articulated in two key cases, a defendant's purported infringement and knowledge of the trademark and the trademark holder's residence constitutes "individualized targeting," thereby supporting a finding of personal jurisdiction over that defendant. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 678–79 (9th Cir. 2012); *Fighter's Mkt., Inc. v. Champion Courage LLC,* 207 F. Supp. 3d 1145, 1152–53 (S.D. Cal. Sept. 14, 2016). Plaintiff claims that these cases confirm that "express aiming" is satisfied whenever an alleged tortfeasor knows that the plaintiff resides in the forum state, as Jay At Play should at least have known when it received a cease-and-desist letter from Plaintiff in June 2019. (*See* Mizrahi Decl. ¶ 2 and Ex. 1).

But the Supreme Court recently rejected this approach, holding that it "impermissibly allows a *plaintiff's* contacts with the defendant and the forum to drive the jurisdictional analysis." *Walden,* 571 U.S. at 289 (emphasis added). The Court clarified that it is the "the *defendant's* suit-related conduct" that "must create a substantial connection with the forum State." *Id.* at 284 (emphasis added). As the Ninth Circuit stated in *Axiom*, *Washington Shoe's* "individualized targeting" test for specific jurisdiction is insufficient to confer jurisdiction post-*Walden*:

> In light of the [Supreme] Court's instructions in *Walden*, mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient to

>comply with due process. Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own support the exercise of specific jurisdiction, absent compliance with what *Walden* requires.

874 F.3d at 1070.

Plaintiff's reliance on *Fighter's Market, Inc.* is similarly misplaced, and has also been criticized for its deference to *Washington Shoe* instead of *Walden*. *See Caracal Enters. LLC v. Surani,* No. 16-cv-05073-RS, 2017 WL 446313, at *3 (N.D. Cal. Feb. 2, 2017 (observing that *Washington Shoe* and *Fighter's Mkt.* "have been cast into doubt by *Walden* and *Picot* [*v. Weston,* 780 F.3d 1206 (9th Cir. 2015)], which post-date *Washington Shoe* and require more than simply the plaintiff's residence in the forum state.") (internal citations omitted).

The Court cannot ignore *Walden* and *Axiom* to find jurisdiction over Jay At Play based on Plaintiff's "individualized targeting" theory. Plaintiff presents no evidence that Jay At Play did anything other than sell the accused products to Walmart in China. Even if Jay at Play knew that Plaintiff was a California company that sold its products in the state, via demand letter or otherwise (Mizrahi Decl. ¶ 2 and Ex. 1), that is not the relevant inquiry. As the Supreme Court explained, "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect, but whether the *defendant's conduct* connects him to the forum in a meaningful way." *Walden,* 571 U.S. at 290. Following this guidance, Jay At Play's purported knowledge of Plaintiff's California connections cannot establish jurisdiction. The mere assertion that an alleged injury will be felt in California is insufficient post-*Walden*. Here, the Court finds that the purported "express aiming" here is nothing more "than a foreign act with foreseeable effects in the forum state." *Pakootas,* 905 F.3d at 577 (internal quotations omitted). Thus, Plaintiffs have not shown Jay At Play's suit-related conduct creating sufficient contacts with California.

### ii. Contacts with the forum through Walmart are not relevant.

Again, *Walden* requires that jurisdiction must arise out of the contacts that "'defendant himself' creates with the forum State," and not defendant's contacts with entities that do business or reside there. *Walden,* 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)); *see also id.* ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between plaintiff (*or third parties*) and the forum state.") (emphasis added). It follows that "a defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction." *Axiom,* 874 F.3d at 1068.

Here, Jay At Play's only discernable suit-related contacts with California are through Walmart, a third party. Applying *Axiom*, the Hong Kong company's relationship with Walmart cannot alone constitute the basis for jurisdiction over it. The uncontroverted evidence before the Court indicates that Walmart takes ownership of MUSHMILLOWS in Shanghai, and controls where they are distributed and sold from there. (Dkt No. 19, ¶¶ 15–16). And despite Plaintiff's assertion that Jay At Play's evidence is "threadbare" (Opp'n at 6), Plaintiff does not dispute that Jay At Play "does not own any MUSHMILLOWS at the time they enter the United States or any time thereafter." (Reply at 5). No facts indicate that Jay At Play either has control over Walmart's distribution of MUSHMILLOWS or directs Walmart to sell them to any particular store or state.

Here, Plaintiff emphasizes that Jay at Play must have known that Walmart would offer MUSHMILLOWS for sale in California. (Opp'n at 14–15). This argument is functionally a "stream of commerce" theory. Notably, "there is conflicting authority over to what extent a substantial connection to establish specific jurisdiction will be found where a nonresident manufacturer places its products into the 'stream of commerce' with an expectation that they will be sold to consumers in

11.

the forum state." Judge Virginia A. Phillips & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial, § 3:129 (The Rutter Group 2019). Critically, though, the Supreme Court has expressed skepticism that jurisdiction may be upheld on a "stream of commerce" theory simply because a foreign manufacturer delivered products generally to the United States, without directly targeting the forum state in particular through local distributors or activities. *J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 882 (2011) (plurality opn.) (finding that merely being able to predict that goods will reach forum state is insufficient). The Court finds that the attenuated nature of the contacts under a stream of commerce theory does not permit the exercise of specific personal jurisdiction post-*Walden*. As Jay At Play points out, adopting Plaintiff's theory would dramatically expand specific jurisdiction because "California courts would have jurisdiction over any and every entity that sells a product to Walmart based solely on the sale of products to Walmart." (Reply at 5). We agree that this is "precisely the type of third-party contact that *Walden* and *Axiom* disavow." (*Id.* at 5–6). Thus, the Court finds that Jay At Play's contacts with Walmart are insufficient to confer specific personal jurisdiction because Jay At Play did not itself create them with California. *See Walden,* 571 U.S. at 284. Therefore, the Court concludes that Plaintiff has not satisfied "express aiming" under *Calder*.

### c. Causing Harm Defendants Know is Likely to be Felt in California

The third element of the *Calder* test requires a showing that the defendant knew the plaintiff would suffer harm in the forum state. *Schwarzenegger*, 374 F.3d at 805. Here, Plaintiff claims that Jay At Play "willfully infringed Kellytoy's SQUISHMALLOWS trademark and trade dress, knowing of Kellytoy's California domicile, and that its goods are actively being sold on Walmart sales floors in California" in direct competition with Plaintiff's goods. (Opp'n at 6). Plaintiff urges that Jay At Play "must have known that the Infringing Plush would be sold in this

12.

state" because "*all* product sold to Walmart necessarily includes a substantial amount bound for California" and "Walmart is a national chain with 281 stores in California." (*Id.* at 15) (emphasis in original).

Plaintiff's argument that Walmart's extensive business in California put Jay At Play on notice of potential harm in California falls short. Walmart's business contacts in California, even if significant, cannot alone establish specific personal jurisdiction. Doing business throughout the nation—like Walmart—does not establish general or specific personal jurisdiction in each state. As discussed above, "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler*, 571 U.S. at 139. Plaintiff's allegations that Jay At Play knew that its Mushmillows would end up for sale in California because Walmart has significant commercial contacts there does not suffice to show that Jay at Play was aware the alleged harm caused would likely be suffered in California.

Further, Plaintiff fails to demonstrate the "relationship among the defendant, the forum, and the litigation," such that the Court could find that Jay at Play foresaw the harm occurring in California. *Calder*, 465 U.S. at 788. While Plaintiff repeatedly asserts that Jay At Play is a "willful infringer" (Opp'n at 5–6) and "deliberately targeted Kellytoy" (*id.* at 7, 10, 13), it fails to make specific allegations that, if proven, would support the purported bad faith.

Because Plaintiff has not satisfied all three elements of the *Calder* test, the Court finds that Jay at Play did not purposefully direct its conduct at California. Accordingly, the Court need not address the second and third prongs of specific jurisdiction. The Court concludes that it lacks both general and specific jurisdiction over Jay At Play, and absent such predicate jurisdiction, the Court also lacks jurisdiction over Franco.

### iii. Jurisdictional Discovery

Plaintiff requests that the Court grant it leave to conduct jurisdictional discovery. (Opp'n at 20–21). District courts have "broad discretion to permit or deny jurisdictional discovery." *Lang v. Morris*, 723 F. Supp. 2d 966, 979 (N.D. Cal. 2011). The Ninth Circuit has adopted a liberal approach to the granting of jurisdictional discovery, but cautioned that it "should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v. SDC Investment, Inc.,* 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Systems Technology Assocs., Inc.,* 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977); *Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 430 n. 24 (9th Cir. 1977)); *see also Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003) (holding that a district court abused its discretion in denying a motion for jurisdictional discovery regarding corporate alter ego liability).

Jurisdictional discovery need not be allowed, however, if the request amounts only to a "fishing expedition." *Johnson v. Mitchell,* No. CIV S–10–1968 GEB GGH PS, 2012 WL 1657643, *7 (E.D. Cal. May 10, 2012) (citation omitted). Rather, a party seeking jurisdictional discovery must present at least a "colorable basis" that jurisdiction exists. *Lang*, 723 F. Supp. 2d at 979. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach,* 453 F.3d at 1160 (quoting *Terracom v. Valley Nat. Bank,* 49 F.3d 555, 562 (9th Cir. 1995) (internal quotation marks omitted)).

Here, Plaintiff's request for jurisdictional discovery amounts to no more than a "fishing expedition" and it must therefore be denied. It seems clear that Jay At Play is a Hong Kong corporation and Franco is a New York corporation, based on both the allegations in Plaintiff's Complaint and Defendants' declarations. (Sutton Decl. ¶ 6

and Franco Decl. ¶ 3). Plaintiff provides no evidence to dispute that Jay At Play: has no offices or staff in California; has no California business registration; has no registered agent in California; pays no California taxes; has not directed Walmart to ship to California; and has not (itself) directly sold or advertised its MUSHMILLOWS in California. (Sutton Decl. ¶¶ 9, 16–19). Further, Plaintiff does not contest that Jay At Play does anything other than deliver its goods to Walmart "FOB" Shanghai, or that the Hong Kong company passes its ownership of MUSHMILLOWS off as soon as it delivers them to a Shanghai warehouse. (*Id.* at ¶ 15). However, Plaintiff requests jurisdictional discovery on the following topics:

1. Correspondence between Defendants and Walmart concerning the scope of Walmart's distribution for the infringing plush;
2. Defendants' other efforts, if any, to sell its Infringing Plush in California;
3. Defendant's knowledge of Kellytoy, or of Squishmallows, which would be evidence of its "express aiming" under the Ninth Circuit/*Calder* jurisdictional test;
4. Whether and to what extent Jay Franco was involved in the development, creation, manufacture, importation or sale of the Infringing Plush or otherwise ratified, approved, induced, and/or directed such activities;
5. The relationship between Jay At Play and Jay Franco, including whether Jay at Play is a division or an alter ego of Jay Franco; and
6. Jay Franco's contacts with California.

(Opp'n at 20).

The Court addresses each request, in turn. First, information regarding the scope of Walmart's distribution does not bear on the jurisdictional inquiry, because again, evidence merely indicating where Walmart distributes MUSHMILLOWS cannot alone support a finding of personal jurisdiction over Defendants themselves. Even if California is on Walmart's MUSHMILLOW distribution list, that does not mean Defendants can be haled into court here. Second, the Court declines to allow Plaintiff to search far and wide for "other efforts . . . to sell its Infringing Plush in

15.

California," especially in light of two declarations that no such efforts exist. (*See generally* Sutton and Franco Decls.). Third, Defendant's mere knowledge of Plaintiff or its plush products would not automatically satisfy the "express aiming" prong of *Calder*, which again, requires a showing of "the defendant's 'own contacts' with the forum," which do not appear to exist. *Axiom,* 874 F.3d at 1070. Fourth, because Franco has declared that it "is not involved in developing, manufacturing, distributing, importing, promoting, or selling MUSHMILLOWS fun pillows" (Franco Decl. ¶ 4), and Plaintiff has not indicated the existence of any evidence to the contrary, the Court declines to allow discovery on this issue. Fifth, although Plaintiff points to one case in an unrelated lawsuit in which Defendants admitted and affirmatively alleged that "Jay at Play is a division or subsidiary of Franco" (Mizrahi Decl., at 3 ¶ 5 and Ex. 4 at 111–128, Dkt. No. 24-1), as Defendant notes "[n]o amount of discovery into Jay Franco's corporate structure can overcome the . . . critical predicate fact—jurisdiction over Jay at Play" is missing. (Dkt. No. 26, at 8). Sixth, the Court declines to allow Plaintiff to scavenge for Franco's California contacts, which appear to include only a California warehouse space operated by a third-party for products unrelated to those in this suit. (Franco Decl. ¶¶ 4, 8).

Absent some evidence that jurisdiction exists, the court concludes that defendants are not entitled to jurisdictional discovery. *See Upper Deck Intern. B.V. . Upper Deck Co.,* No. 11-cv-1741-LAB (CAB), 2012 WL 1713453, at *9 n.6 (denying a request for jurisdictional discovery because "UDC has nothing other than blind hope that additional, helpful jurisdictional facts will turn up, and that's an inadequate basis for allowing jurisdictional discovery"). Plaintiff has failed to adequately demonstrate that plaintiffs are California citizens, subject to general jurisdiction, or that they have sufficient minimum contacts with this forum. Plaintiff has also failed to make a colorable showing that jurisdiction exists such that it would be appropriate to order jurisdictional discovery. Accordingly, the Court does not believe that further

discovery would show facts sufficient to establish a basis for personal jurisdiction and, thus, denies Plaintiff's request, finding no colorable basis for granting jurisdictional discovery. *See Wells Fargo & Co.,* 556 F.2d at 430 n. 24; *see Terracom,* 49 F.3d at 562 (holding that discovery is not warranted if a plaintiff cannot "demonstrate how further discovery would allow it to contradict the [defendant's] affidavits").

Thus, lacking personal jurisdiction over Defendants and finding insufficient cause for jurisdictional discovery, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss for lack of personal jurisdiction. Finding insufficient cause, the Court also **DENIES** Plaintiff's request for jurisdictional discovery. The Court further finds that allowing Plaintiff to amend its complaint to establish personal jurisdiction would be futile, and thus dismisses Plaintiff's complaint on jurisdictional grounds **WITH PREJUDICE**.

Dated: December 5, 2019     _____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE